[No. 1741.  Decided December 24, 1895.]

THE SEATTLE NATIONAL BANK, *Respondent*, v. GEORGE R. CARTER *et al.*, *Defendants*, DANIEL JONES, *Appellant*.

PLEADING — INCONSISTENT DEFENSES.

Where an allegation of general denial in an answer is followed in an affirmative defense by a special averment of the truth of ·the matter which had been denied, the defenses are so inconsistent they cannot stand together, and the plaintiff will not be compelled to establish the truth of an allegation in his complaint to which such defenses are set up.

Appeal from Superior Court, King County.— Hon. RICHARD OSBORN, Judge.   Affirmed.

*James Leddy*, and *Gleason & Babcock* (*Thompson, Edsen & Humphries*, of counsel), for appellant:

Against the proposition that an answer in denial of a fact material to plaintiffs' right of recovery is destroyed by an admission inconsistent therewith, contained in an affirmative defense, counsel cite Pomeroy, Remedies, (2d ed.) §§ 722-724; *Lynch v. Richter*, 10 Wash. 486; *Woods v. Reiss*, 29 N. Y. Supp. 263; *Goodwin v. Wertheimer*, 99 N. Y. 154; *Societa Italiana v. Sulzer*, 138 N. Y. 472; *Siriani v. Deutsch*, 34 N. Y. Supp. 26; *Peoria, etc., Ry. Co. v. Barton*, 38 Ill. App. 469.

*Carr & Preston*, and *W. R. Bell*, for respondent:  *

A general or specific denial in an answer is always controlled by an affirmative ·allegation inconsistent with it.  *Derby v. Gallup*, 5 Minn. 119; *Miller v. Larson*, 17 Wis.· 624; *School District v. Holmes*, 16 Neb. 486; *Dickson v. Cole*, 34 Wis. 626; *Sexton v. Rhames*, 13 Wis. 102; *Marx v. Gross*, 9 N. Y. Supp. 720; Max-

well, Code Pleading, p. 396; *Hartwell v. Page*, 14 Wis. 52; *Farrell v. Hennesy*, 21 Wis. 635.

The opinion of the court was delivered by

DUNBAR, J.—This case was originally begun by the respondent in the equity department of King county, but some questions of fact arising for determination between the appellant and the respondent, it was transferred to the law department in the superior court of said county.

The notes in suit were made by the appellant as a subscription in aid of an enterprise in which he and a number of other persons were interested, viz., the building of a boulevard along the west shore of Lake Union. At a meeting of those interested in the enterprise, at which appellant was present, he subscribed $2,500 towards carrying on the enterprise, and a committee was elected and appointed by the meeting as an executive committee to have full charge and control of the work. This committee consisted of L. H. Griffith, Edward Bluett and C. E. Remsberg. The committee, through its manager Griffith, afterwards sold the notes given by appellant to respondent, the Seattle National Bank.

The notes were made payable to the order of the members of the committee. One of the notes sued on is a renewal of the note made payable three months after its date. The renewal was made after the maturity of the original note and while it was held by respondent; the other note was made payable six months after date. Griffith indorsed on the back of each note the following: "L. H. Griffith, Edward Bluett, C. E. Remsberg, committee, by L. H. Griffith, chairman," and delivered them so indorsed to the respondent, and received from the respondent the sum

of $2,500, the full face of the notes. This money was deposited to the credit of the treasurer of the boulevard enterprise, and was expended in prosecuting that enterprise.

George R. Carter and Nellie Phinney, as the executrix of the last will and testament of Guy C. Phinney, deceased, were made defendants for the purpose of reforming and foreclosing a certain mortgage given as security for the notes in question, but they have not appealed from the judgment rendered and need not be further noticed in this opinion.

The amended complaint alleged that prior to the maturity of the notes in suit, the said Griffith, Bluett and Remsberg, as such committee, for a valuable consideration, duly indorsed and delivered the said promissory notes to plaintiff, and plaintiff then became and now is and ever since has been the owner and holder of said promissory notes. These allegations are denied by general denial in the amended answer of the appellant, and on this denial the principal point in this case is raised.

We have examined the testimony in this case *in minutiae*, and believe that it is sufficient to sustain all the contentions of the respondent as to the manner of executing the notes, the reason for their execution, the authority conferred upon Griffith, the manager of the committee, to transfer the notes, and in every other particular. On all these propositions, it is true, the testimony is conflicting, but we think it would be sufficient to sustain the verdict even if the law of the case were as contended by appellant. But as the question of inconsistent defenses is raised squarely in this case, and has been argued with much zeal and ability by the attorneys on both sides, we have concluded to enter upon an investigation of that question

and settle the law, so far as this state is concerned, on that proposition. Cases from this court are cited by both counsel to sustain their respective contentions, but whatever may have been said by this court on this subject heretofore has been of the character of *dicta*, or an incidental reference to a question which was not material to the decision of the case under discussion. So we feel at liberty to enter upon its investigation as an original proposition.

The answer, as we have said, denies that the plaintiff was the owner and holder of said notes, or that they had been indorsed and delivered to it for a valuable consideration, or otherwise. The court in its instructions, to which the appellant duly excepted, charged the jury that under the pleadings in this case the only question for their consideration was the question of whether the notes were paid. The defendant, after his general denial which was upon information and belief, affirmatively alleges the transfer of the notes to the plaintiff. He alleges in his first affirmative defense that the notes were executed and delivered to L. H. Griffith, Edward Bluett and C. E. Remsberg, and that subsequently to the execution and delivery of the said notes the said committee transferred them to the plaintiff; and in another paragraph of the same affirmative defense, alleges the payment of these notes by L. H. Griffith to the respondent. The averment of the transfer of the notes to the respondent is repeated in the second affirmative defense, where it is also alleged that the respondent, for a valuable consideration, extended the time of payment of the notes (and by reason of such extension of time the appellant claims that he is exonerated from the payment of the notes). The allegation of transfer is again repeated in the third affirmative defense, and an

agreement for the settlement and the compromise for the appellant's liability upon said notes is there averred, by which it is alleged it was agreed that certain lands owned by the appellant should be conveyed in full payment of the notes; and appellant alleges the conveyance of the said lands to George R. Carter as trustee for the respondent, in full payment of the said notes.   He further alleges in the third affirmative defense that subsequently to the maturity of the notes he demanded the surrender to him and possession of said notes.

Now, the question under this pleading is, was the court justified in instructing the jury in substance that the question of ownership of the notes and transfer to the respondent was not for their consideration. On this subject of inconsistent defenses there have been many conflicting decisions, but we think their origin has been in a misunderstanding of the cases cited and relied upon as sustaining the doctrine that inconsistent defenses under the reformed practice of pleading could be maintained; and, secondly, a loose discussion and misapprehension of what inconsistent pleadings really are.   The idea that inconsistent defenses to the extent of being false defenses could be tolerated under the code has received a stimulus from the announcement of Mr. Pomeroy, in his excellent work on Remedies and Remedial Rights, § 722, that:

" Assuming that the defenses are utterly inconsistent, the rule is established by an overwhelming weight of judicial authority, that, unless expressly prohibited by the statute, they may still be united in one answer.   It follows that the defendant cannot be compelled to elect between such defenses, nor can evidence in favor of either be excluded at the trial on the ground of the inconsistency."

This announcement is attempted to be fortified by

the citation of a large number of authorities.   It was insisted by counsel for the respondent that an investigation of these authorities would show conclusively that they do not bear out the statement made by the author, and for the purpose of obtaining all the light possible on this question we have carefully examined the cases cited and are forced to the conclusion that the learned author was unwarranted in making the assertion that the rule he announced was established by an overwhelming weight of judicial authority or any weight of authority at all, under the code practice.

We think it legitimately follows, however, that if these inconsistent defenses are allowed to be pleaded, evidence under them cannot be excluded at the trial on the ground of the inconsistency.   Then, if they are inconsistent to the extent that if one of the averments in the answer is true the other must be false, and we follow the rule — as we must — that if it is a proper subject of allegation, it is a proper subject of proof, a court of justice is placed in the absurd position of listening to proof of a defendant tending to sustain one proposition, and in the next breath proving another proposition the facts of which are inconsistent with the one just testified to.   This theory carried to its logical result would permit a defendant who was sued upon a promissory note to allege non-execution, want of consideration and payment.   Under such allegations he would be permitted to swear that he never executed the note; that he *did* execute the note but that it was without consideration; and that he *did* execute the note, that the consideration *was* good, but that he had paid the same.   Such a practice as this would not only be farcical but absolutely wrong and immoral and an encouragement of perjury, and

the example given is not extravagant, if the theory announced by the author be correct.

We take it that the only object of a law suit is the elicitation of truth, and that the only object of pleadings is to aid in determining the truth of the controversy.    But the result of allowing pleadings to stand which are inconsistent to the extent of being untrue, would have exactly the opposite tendency, and courts would simply become machines to aid unconscionable litigants in avoiding their just responsibilities.   Under the common law practice pleadings were based upon fictions, but the code has undertaken to work a revolution in that respect, and under its provisions it is the evident intention that the pleadings shall be based upon facts which are susceptible of proof.   Our code provides that the complaint shall contain a plain and concise statement of facts constituting a cause of action;  and while it does not in so many words provide that the answer shall contain a statement of facts, it does so in substance so far as any affirmative allegations are concerned, for the language of the code is that it shall contain a statement of any new matter constituting a defense or counter-claim in ordinary and concise language.   It is true that it further provides that the defendant may set forth by answer as many defenses and counter-claims as he may have, whether they be such as have been heretofore denominated legal or equitable or both.   This is all the authority there is for claiming that under the code the defendant is allowed to plead inconsistent defenses. It is true that he may set forth as many defenses as he has, but it could not have been the intention of the code that he should set forth anything that was not true, for if it was not true it would not be a defense.   There certainly could have been no intention

to have discriminated against the plaintiff by giving advantage to the defendant, so far as the pleadings are concerned. It is just as consistent to insist that the plaintiff may state in his complaint inconsistent causes of action or facts constituting his cause of action which are inconsistent with each other, as to insist that the defendant may do so in his answer. The evident intention of the code was to place them upon an equal footing, to compel the plaintiff by his complaint, through the medium of a statement of facts, to inform the defendant what the true cause of action or complaint was; and it was just as much the intention of the framers of the code to compel the defendant, if he had an affirmative defense, to inform the plaintiff by his answer what that affirmative defense was. There can be no reason or right in any other theory. The object of the code was to simplify law suits. Whether it has succeeded in doing so may be questioned, but certainly it must be consistent with itself, and it would bring about untold confusion and bad results to undertake to engraft into the code practice practices which were admissible under, and probably harmonized with, the theory of the common law practice. The two are incongruous and must be kept separate and distinct, and therefore the commingling of the two evolves a system which is worse than either.

But, notwithstanding the inconsistency of the courts in announcing the doctrine of inconsistent defenses, the authorities cited by Mr. Pomeroy in the text above referred to, while they use the expression in some instances that under the code inconsistent defenses may be allowed, yet evidently do not mean that the defendant is allowed to plead a false defense, a defense which is *utterly* inconsistent with the other defenses pleaded.

Thus, one of the cases cited in the note of the author, viz., *Bell v. Brown*, 22 Cal. 671, announces that several defenses inconsistent with each other may, under proper circumstances, be set up in a verified answer. In that case, in an action to recover a mining claim, the complaint alleged title and possession in plaintiffs on a certain day. The answer denied that plaintiffs ever had either title or possession, and afterwards averred that if plaintiffs ever had a title to the claim, they had abandoned and forfeited it before defendants' entry. The question of title and possession might have been very largely a question of law which it would have been unsafe for the defendants to have admitted. But that is altogether a different proposition from the one under consideration, where there is an affirmative allegation in the answer which, if true, sustains an allegation of the complaint, a fact alleged the proof of which is material to the support of the plaintiffs' cause of action. In this case there are no hypothetical facts pleaded, but the answer plainly avers that the notes were transferred; that the appellant dealt with the respondent as the owner and holder of them, and that as such owner and holder he made settlement for said notes. The most that could be said of such a pleading as this, where in one breath the pleader denies a fact and in the next admits it, is that the denial and admission balance each other and leave the complaint in the position it would be in if no denials or admissions had been made. But in this instance the case is stronger against the defendant, for he denies by general denial and avers by special averment the truth of the thing which he denied.

*Buhne v. Corbett*, 43 Cal. 264, was an action of eject-

ment, where the plaintiff demanded the premises and averred that at a certain date the possession was unlawfully withheld from him by the defendants. The defendants in their answer denied that on said day, or at any other time, they entered into the possession of the premises, or that they then withheld the possession of the same; and they affirmatively made the showing that the lands belonged to the United States; that the United States had continually occupied and possessed said lands from a date long prior to the date of the alleged withholding by the defendants, for lighthouse purposes; that it had erected and maintained a lighthouse thereon; that the defendants were the keepers of the lighthouse and employed by the United States at stipulated wages, and that as such keepers they were mere servants and employees of the United States, subject at any and all times to the orders, directions and commands of the United States; that as such servants they were in the temporary charge of the light and lighthouse buildings on said land for the sole purpose of keeping the light burning at proper times; averred that they did not at that time and never had claimed any interest in said lands or improvements or any part thereof; but that since its reservation for a lighthouse the land had been in the sole possession of the United States through its employees; and this case was based upon the doctrine announced in *Bell v. Brown, supra.* So that it will be seen at a glance that, while the court announces in words the rule that inconsistent answers may be pleaded, these answers were really not inconsistent; that the sole object was to raise the issue that the possession alleged by the complaint was the possession of the United States and not the possession of the plaintiff in the action.

The next case cited, that of *Willson v. Cleaveland*, 30 Cal. 192, is a still weaker case and cites in its support also the case of *Bell v. Brown*. All that was decided in that case was that a defendant may deny the title of the plaintiff, and also plead the statute of limitations. It would seem that comment on this case was unnecessary; one is the pleading of a legal defense and the other a defense on the merits, and the court in that case specially says that the defenses are not inconsistent.

It may profitably be noted here that a great majority of the cases which have announced the doctrine that inconsistent defenses may be pleaded, cite in support of the announcement *Hollenbeck v. Clow*, 9 How. Pr. 289, which announces the rule that in pleading defenses under the code the defendant shall not be required to elect between a denial of the material allegations in the complaint and new matter constituting a defense. That is, that the defendant should never be required to *admit* allegations in the complaint which he might otherwise be able to deny as the *condition* upon which he is permitted to set up affirmative matters of defense. This was an action for slander where the charge as stated in the complaint was that the defendant stated that plaintiff had stolen the defendant's hay. There was a general denial by the defendant, and then the answer proceeded as follows:

"And the said defendant further answering says, that all the words which were spoken or uttered by the defendant of, to or concerning the said plaintiff as set forth in the complaint, charging him, said plaintiff, with stealing or taking hay, or that the plaintiff had stolen the defendant's hay, were spoken and uttered by the defendant in reference to a quantity of hay which the defendant had cut and stacked in

the summer of 1853, and to which hay the plaintiff claimed title, and which hay the plaintiff, under such claim of title, in the day time, took and removed upon lands adjoining to and in sight of where it had been left by the defendant, which trespass or transaction, and not the crime of larceny, was all that the defendant intended by the speaking of said words, and was so understood by and explained to all who heard the defendant utter the words."

We have set this answer out at length because it conclusively shows that the defenses pleaded in this case were not inconsistent, but that the averment, after the general denial, was simply a pleading of the facts, the legal effect of which would be to sustain the general denial, and would in no sense be an untrue averment, conceding the truth of the general denial; and it will be seen that they are in no sense inconsistent, although the court in announcing its decision speaks of them as inconsistent defenses. But the cases cited and reviewed by that court conclusively show that, in the judgment of the court, the defenses were not actually inconsistent, and certainly did not attempt to lay down the rule that inconsistent defenses could be pleaded to the extent of pleading untruthful defenses, for, in commenting on the case of *Arnold v. Dimon*, 4 Sandf. 680, cited by Justice CRIPPEN in *Roe v. Rodgers*, 8 How. Pr. 356, where the action was against a carrier for the loss of goods and defendant denied that he was the owner of the vessel upon which the goods were shipped, and then averred that the goods had in fact been delivered to the plaintiff, the court said:

"It is quite possible, to say the least, that both of these defenses might have been true. They were, therefore, not wholly inconsistent and should have been allowed to stand."

So that it will be seen that this case is no basis at all for the announcement of the rule that defenses which are utterly inconsistent may be pleaded.

*Butler v. Wentworth,* 9 How. Pr. 282, was also a case of slander, where the defendant answered, saying:

" I have no recollection or belief of having so accused you, but, secondly, if I did, the charge was true."

As a matter of course, if the defendant had no recollection of having used the slanderous words, he had a right to put the plaintiff upon his proof upon that question. He might not have known as a matter of fact whether he did use them or not. He may have used them and forgotten them. And if it should eventuate in the trial that he did use them, then certainly he should not be deprived of his defenses of the truth of the words uttered. It cannot be said that in any sense these defenses are inconsistent.

*Vail v. Jones,* 31 Ind. 467, announces the doctrine that under the code the defendant may set forth in his answer as many grounds of defense as he may have, without regard to the location of the subject matter, which was simply the language of the statute; but the case itself decides nothing that tends to sustain the doctrine claimed by the appellant.

*Weston v. Lumley,* 33 Ind. 486, was a slander case, and the court there simply reiterated the doctrine announced in the other cases of that kind which we reviewed; although what was said by the court even in this case was simply *dictum,* for it decided that the question could not be raised upon demurrer as it was attempted to be raised there.

The case of *Moore v. Willamette Trans. & Locks Co.,* 7 Or. 355, was where the answer alleged that the defendant was the owner of the entire estate, and also

pleaded that he was the owner of one undivided part thereof, and the court decided there that inconsistent defenses could be pleaded, but that these defenses were not inconsistent, because the defendant might be mistaken as to his legal title, and if he was he had the right to rely upon the title not being in the plaintiff.

*Barr v. Hack*, 46 Iowa, 308, was a slander case, and the doctrine there announced was simply that which we have noticed in the decisions above.

We are at a loss to know why *Wright v. Bacheller*, 16 Kan. 259, was cited to sustain this doctrine, for there it was expressly said by the court, that inconsistent pleas should not be encouraged; and while the case did not come up on instructions to the jury, the court below refused to allow the plaintiff to reply to an inconsistent averment in defendant's answer, and the supreme court held that such refusal on the part of the lower court to allow this averment to be put in issue by a reply was error, the defendant there having denied that she voluntarily or involuntarily executed a mortgage, and afterwards averring that if she executed the mortgage she was forced by her husband to execute the same against her will; and the court said:

"These allegations are inconsistent with the affirmative allegations of the answer; for it cannot be true that she executed a mortgage under duress which she never executed. The setting up of inconsistent defenses like these should never be encouraged."

The court expressly says that they do not pass upon the question as to whether the second defense stated in the answer was sufficient as a defense to require a reply thereto; that they express no opinion upon that subject, but that, assuming it to be such a defense, the court below erred in not allowing a reply to be filed.

In *Bruce v. Burr*, 67 N. Y. 237, it was held that in an action for breach of a contract of sale, the defendant might set up a rescission of the contract on the ground of fraud or mistake, and also breach of warranty on the part of the plaintiff. It is manifest that these defenses are not inconsistent, and that they both might be true and both or either would be a proper defense to the action; for the plaintiff may have committed a fraud in procuring the contract, and he also may have been guilty of a breach of the warranty after the contract was procured.

The case of *Amador County v. Butterfield*, 51 Cal. 526, in no way sustains the contention.

*Citizens' Bank v. Closson*, 29 Ohio St. 78, was an action by the bank against Closson upon a promissory note alleged to have been made by him to R. R. Fenner & Co. and indorsed to the bank before due. Closson set up the following defenses: (1) he denied the execution of the note; (2) he alleged that if the signature to the note was his, it was obtained by a fraudulent and cunningly devised scheme or trick without his knowledge, setting forth the fact that he was induced by false and fraudulent representations of Fenner & Co. to sign certain papers, represented to be mere receipts or orders relating to a proposed agency for selling a patent invention, and that if he signed the note his signature was procured by making him believe that he was signing one of the receipts or orders; that it was obtained without consideration and that the bank had knowledge of these facts when it purchased the note. The supreme court very properly held, and could not have held otherwise under any system of pleadings, that these defenses were all open to the defendant. They are not in any sense inconsistent, for even though the note was made as

affirmed in the second defense, it would not be a legal execution of the note, and consequently does not contradict the first denial, viz., the denial of the execution of the note.

The case of *Pavey v. Pavey*, 30 Ohio St. 600, is exactly the same kind of a case, and is based upon the decision of the case of *Citizens' Bank v. Closson, supra,* and the court says that it cannot be distinguished from that case.

These are all the cases that are cited by Mr..Pomeroy to sustain the text, and we think it must be conceded upon an investigation of them that they absolutely fail to do so. Many of these cases are cited by the appellant in his reply brief. Many others, however, are cited, and an investigation of those cases convinces us that they are as far from sustaining the doctrine of inconsistent defenses as those cited by Mr. Pomeroy, which we have just reviewed.

Want of time prevents us from reviewing these cases in detail, but a careful examination of them convinces us that they go no further than the cases above reviewed, with the exception possibly of *Stebbins v. Lardner*, 2 S. D. 127 (48 N. W. 847), and this case is based upon the announcement of the text above referred to by Mr. Pomeroy, and cites the cases cited by that author to sustain the theory announced by the court. In none of the cases examined has it been held that an affirmative allegation by the defendant of a fact which, if true, would necessarily compel the conclusion that some other fact which had been pleaded in the same answer was false, can be sustained, and while much loose talk has been indulged in by the courts concerning the pleading of inconsistent defenses, when the facts involved in the cases are scrutinized it can easily be ascertained that

the courts have never announced the rule established under the code pleading where the answer has to be verified by oath, that the pleader will be allowed to compel the plaintiff to enter upon the investigation of a state of facts which, if admitted to be true, would subject the defendant to the penalties of perjury.

There are other cases, however, that have decided this question as we are deciding it now, and the courts in those cases have spoken with no uncertain sound. It is not difficult to tell what they have decided. They base their decisions on principle and sustain them with practical and cogent reasoning. Chief among these cases is that of *Derby v. Gallup*, 5 Minn. 119. The opinion of the judge in that case, says Mr. Pomeroy in his notes, " is very able and difficult to be answered on principle," thus showing that the sympathy of that learned author was with this line of decisions and that the rule he announced was based upon a false conception of the authorities quoted.

In conclusion, this much at least must be demanded, that, however diversified the answers may be, they must all contain the essential element of truth, and if the admission of the truth of one answer necessarily proves the falsity of another, they cannot be allowed to stand, and the plaintiff will not be compelled to sustain the truth of an allegation the truthfulness of which is asserted by the defendant.

The judgment will be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.