[No. 7002.   Decided April 25, 1908.]

THEODORE O. LOVELAND *et al.*, *Appellants*, v. JENKINS-BOYS COMPANY, *Respondent*.[1]

PLEADING—ANSWER—INCONSISTENT DEFENSES. A denial of the execution of a contract, and an affirmative defense setting up that any signature of the defendant secured by plaintiff to any contract was obtained by trickery and fraud, which was set forth, are not inconsistent defenses.

CONTRACTS—VALIDITY—EXECUTION— FRAUD — ESTOPPEL — LACHES. Negligence and laches in signing his name to a contract does not estop a party from asserting its invalidity by reason of trickery and fraud in securing his signature without his intent to sign a contract or knowledge that he was doing so.

SALES—AVOIDING CONTRACT — RETURN OF GOODS — LIEN FOR ADVANCES. A consignee who receives and advances the freight on a shipment of goods, which he was not under contract to take, as appears after opening the package, is not under obligation to return them, but may give notice and hold them until repayment of the advance.

[1]Reported in 95 Pac. 490.

Appeal from a judgment of the superior court for What-com county, Neterer, J., entered June 3, 1907, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Affirmed.

*Bugge & Swartz*, for appellants.

*Rose & Craven*, for respondent.

FULLERTON, J.—This action was brought by the appellants against the respondent to recover upon a written contract for the sale of jewelry. The contract in question was in the form of an order directing the appellants to ship to the respondent the jewelry described on a certain list to which the order was attached, on the terms printed thereon. The complaint set forth the contract, alleged its execution by the respondent and delivery to the appellants, the shipment of the goods ordered, their receipt by the respondent, and the failure and refusal of the respondent to pay for the same. For answer the respondent denied executing the written contract set out, or giving any written order for the goods described therein on the terms set out in the contract; and for a further and separate answer, alleged in substance that it entered into an oral contract with the appellants to sell certain of its goods on commission, the kind and character of which were particularly described; that the appellants shipped it the goods described in the complaint; that, upon the receipt of the goods, it paid freight and drayage charges for their transportation from their place of shipment to the respondent's place of business, amounting to $6.85, the payment being necessary in order to obtain the goods from the carrier; that it thereupon proceeded to unpack the goods, when it discovered that the goods were not of the character or kind the appellants had agreed to furnish, nor were they goods that the respondent could handle in connection with the business in which it was engaged; that it immediately repacked the goods and notified the appellants by letter that it would not receive the same, and would return

them to the appellants on the repayment of the freight and drayage charges it had advanced. That the appellants replied to the letter, claiming that they had made a sale of the goods to the respondent and held a written order for the same. It further alleged that this was the first time it learned that the appellants claimed to have a written order for the goods, and averred that if the order bore the genuine signature of the respondent, such signature was obtained thereto by trickery and fraud, and without the knowledge of the respondent. It then set forth the manner in which the signature was obtained. This it did in the following language:

"[The appellant's agent] then asked H. C. Jenkins, an officer of the defendant, with whom the greater part of the above negotiations was had, to state the exact corporate name of defendant, so that the consignment arranged for might be correctly addressed, and with a pencil in hand made a movement indicating that he was about to write out the same. Defendant by its said officer informed him of the correct spelling of said name, and the said Wood replied that the word 'Boys' was speled in a peculiar manner and asked the said officer of defendant to write it out for him himself, handing him the pencil, and indicating on what said official supposed was a piece of paper containing only the blanks for the name of customers and their address the place for him to write the same. That the said official of defendant for the sole purpose of getting the correct name of defendant, as requested, wrote out the same upon the paper thus indicated by said Wood, without the defendant having entered into any contract except as above indicated, and with no purpose or intention to sign any contract whatsoever. That if the document so alleged by plaintiffs to be a written contract bears the signature of defendant, such signature was obtained by trickery and fraud, and under the circumstances as here in this answer set forth, and not otherwise. That said alleged contract was never read to or by the defendant or any of its officers; that at the time defendant's officer wrote out the name of the defendant as aforesaid, the plaintiffs by their representative, with intention to trick and deceive the defendant, had a confusion of papers on the showcase over which the said officer of defendant was engaged, and that if plaintiffs' al-

leged contract bears the signature of defendant, the plaintiffs by their said representative covered and concealed the upper part of said paper in such confusion of papers which the said Wood had upon the showcase over which the defendant's said officer was working, and upon which the paper was lying upon which he wrote out the name of defendant as aforesaid, and that the purchase outright of the goods set forth in the complaint had not been discussed at any time during said negotiation, and that the defendant had consented to receive no goods whatsoever from the plaintiff except the showcase and certain goods upon consignment under the circumstances and in accordance with the arrangement above expressly set forth."

The appellants moved to strike the answer on the ground that it was inconsistent. This motion was denied, whereupon it demurred on the ground that the affirmative answer stated no defense. This demurrer was likewise overruled, whereupon it filed a reply, denying the affirmative matter in the answer, and alleging affirmatively that the respondent ought not to be heard as to its affirmative defense for the reason that it had not complied with the contract it admits it entered into. The affirmative matter was stricken on motion. The cause was then tried before the court and a jury, and resulted in a verdict and judgment for the respondent.

It is first assigned that the court erred in refusing to strike the answer on the ground of inconsistency. It is argued that the answer contains both a denial and an admission of the execution of the contract, and that such answers are not permitted under the code. But we think the appellants mistake the effect of the answer. There is no admission of the execution of the contract. The averment in the separate answer is that the signature of the respondent to the writing purporting to be a contract was obtained by trickery and fraud, and without any intent on its part to enter into a written contract. Pleadings are construed according to their legal effect, and it is not a legal execution of a contract to procure the maker's signature thereto by trickery and fraud, and when a person so defrauded is sued upon the purported contract, he may

properly deny its execution and plead affirmatively the fraud practiced upon him by which he was induced to apparently execute it. The question what constitutes inconsistent defenses received a somewhat elaborate consideration by this court in the case of *Seattle Nat. Bank v. Carter*, 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177. Reviewing a case from Ohio where the facts were similar to the facts in the case at bar, the court said:

"*Citizens' Bank v. Closson*, 29 Ohio St. 78, was an action by the bank against Closson upon a promissory note alleged to have been made by him to R. R. Fenner & Co. and indorsed to the bank before due. Closson set up the following defenses: (1) He denied the execution of the note; (2) he alleged that if the signature to the note was his, it was obtained by a fraudulent and cunningly devised scheme or trick without his knowledge, setting forth the fact that he was induced by false and fraudulent representations of Fenner & Co. to sign certain papers, represented to be mere receipts or orders relating to a proposed agency for selling a patent invention, and that if he signed the note his signature was procured by making him believe that he was signing one of the receipts or orders; that it was obtained without consideration and that the bank had knowledge of these facts when it purchased the note. The supreme court very properly held, and could not have held otherwise under any system of pleadings, that these defenses were all open to the defendant. They are not in any sense inconsistent, for even though the note was made as affirmed in the second defense, it would not be a legal execution of the note, and consequently does not contradict the first denial, viz., the denial of the execution of the note."

It is next urged that the court erred in overruling the demurrer to the separate defense. It is argued that, assuming the allegations of the answer to be true, it shows such a degree of negligence and laches on the part of the respondent in putting its name to the writing as to estop it from questioning its validity. But the appellants evidently overlook their own part in the transaction. The charge is that they obtained the signature by deceit and fraud. When this was proven the respondent's carelessness became immaterial. Where there is

an intent to execute a contract in writing, and one of the parties to it seeks to rescind it on the ground that he was not fully informed as to its contents, then the question of his negligence and laches in its execution becomes material. But the law of rescission has no application to a case where the signature of a party to a writing he had no intention of executing is obtained by trickery and fraud.

The affirmative matter in the reply was properly stricken. If the respondent did not perform the contract that was actually entered into, the remedy is a suit upon that particular contract; the respondent cannot be held upon a contract that it did not enter into merely because it failed to perform the contract it did make. The appellants seem to argue that the respondent is bound by the contract because it did not return the goods to the appellants. But it was under no obligation to do this. Had it appropriated them to its own use it could have been held to account for their reasonable worth, but it did its full duty to the appellants when it gave them notice that the goods were subject to their order on the payment of the charges advanced. The respondent was not, as the appellants argue, attempting to rescind a contract. There was no contract. The pleadings and proofs are to the effect that the writing called a contract was obtained from it by fraud. It therefore furnished no basis whatever from which to determine the appellants' rights. The respondent owed to them the duty concerning the goods that fair dealing between man and man required, and this was fully complied with when it repacked the goods and gave them a reasonable time to repay the charges it had been wrongfully induced to pay thereon and take the goods away.

The instructions requested were properly refused by the court as inapplicable to the issues. They were based on the assumption that a contract had been entered into, and that the respondent was seeking to set it aside. But, as we have said, this was not the issue before the jury. The issue was one of fraud in procuring the respondent's signature to a

purported contract, and this was the question the jury were to determine. If they found it adverse to the respondent, the appellants were entitled to recover, as no other defense was interposed. The court fully and fairly charged the jury to this effect, and in doing so it performed its entire duty in that regard.

We find no error in the rulings of the court in admitting and rejecting evidence. There was substantial evidence also to sustain the verdict of the jury, and their finding is conclusive in this court as to the facts. The judgment should be affirmed, and it is so ordered.

HADLEY, C. J., CROW, ROOT, MOUNT, RUDKIN, and DUNBAR, JJ., concur.